IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES E.M. PEEL, SR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RICHARD A. ALEXANDER and )<br>KIMBERLY MCCOLLOUGH, )<br>)<br>Defendants. ) | Case No. 09-CV-092-GKF-FHM |

**OPINION AND ORDER**

Before the court is the Motion for New Trial [Dkt. #72] filed by plaintiff, James E.M. Peel, Sr. Plaintiff asserts two grounds for a new trial: (1) his right to an impartial jury was violated because one juror gave an "incorrect response" during voir dire regarding whether he knew any of defendant's witnesses and had he answered the question truthfully, he would have been subject to disqualification; and (2) the jury instructions failed to conform to the Pretrial Order.

This civil rights lawsuit arises from two encounters between plaintiff and Tulsa police officers. The first incident occurred on November 24, 2007, when police officers made a warrantless entry into plaintiff's apartment. The second incident occurred on January 30, 2009, when he was stopped in his car by police officers. Plaintiff alleges police detained him for one to two hours even though he had committed no traffic violations. Plaintiff asserted both incidents were racially motivated. [Dkt. #41 at 1].

Plaintiff sued police officers Richard A. Alexander and Kimberly McCollough. The Final Pretrial Order entered by the court stated that, with respect to the first incident, plaintiff

specifically alleged that defendants' actions were "violative of the Fourth Amendment and were negligent under state law." [*Id.*]. With respect to the second incident, he asserted a Fourteenth Amendment Equal Protection Clause violation. [*Id.* at 1-2].

The case was tried to a jury January 17-19, 2012. At the commencement of trial, plaintiff voluntarily dismissed with prejudice all claims against Alexander and his claim against McCollough regarding the January 30, 2009, traffic stop, leaving for trial his claim against McCullough for the first incident. [Dkt. #67]. On January 19, 2012, the jury returned a verdict in favor of the defendant and against the plaintiff on plaintiff's claim for violation of his Fourth Amendment right against unreasonable search and seizure. [Dkt. #69].

## I. Juror Issue

During jury voir dire, the following exchange took place:

THE COURT: Do any of you know either of the parties to this lawsuit, Mr. James E.M. Peel, Sr. or Ms. Kimberly McCullough? All right. Seeing no affirmative responses.

Do any of you know any of the attorneys involved in this case? All right. Seeing no affirmative responses.

Do any of you know any of the following individuals who are expected to testify as witnesses in this case: Mr. Peel, the plaintiff; and—is it Neena or Nina?

MR. PEEL: Nina.

THE COURT: Nina. –Nina Lee Peel, Mr. Peel's wife; the defendant, Kimberly McCullough; Officer David Young; Sergeant Doug Brown; and Sergeant Shane Tuell, that's T-U-E-L-L? Do any of you know or think you may know any of the witnesses who are expected to testify in this case? All right. Seeing no affirmative[] responses.

Now, knowing what little you know about this case, have any of you had any sort of experience that you feel might affect your consideration of this case? Yes, sir? Mr. Sumner.

JUROR SUMNER: I was a former Tulsa police reserve officer for approximately 10 years.

THE COURT: All right. Do you think that might affect your ability to be fair and impartial as a juror in this case, sir?

JUROR SUMNER: No, sir.

THE COURT: All right. Have you ever, specifically to you, have you ever been charged with this type of claim as a reserve officer?

JUROR SUMNER: No, sir.

\* \* \*

THE COURT: And Mr. Sumner?

JUROR SUMNER: My name is Jesse Sumner. I'm an attorney and I currently work for the Bank of Oklahoma in the mineral management department. I live in Broken Arrow, about 101st and 129th East Avenue. My wife's name is Michelle Sumner and she works for Cancer Treatment Center. And we have two children.

THE COURT: Now, is that minerals management group down on Peoria there?

JUROR SUMNER: Well, the mineral management department is located downtown, but I work out of the 57th and Lewis office.

\* \* \*

THE COURT: Thank you very much.

Counsel, if you'll approach for challenges.

(THE FOLLOWING PROCEEDINGS WERE HAD AT THE BENCH, OUT OF THE HEARING OF THE JURY):

THE COURT: Any challenge for cause? Mr. Benjamin.

MR. BENJAMIN: Well, you probably won't agree but I think the police officer, the one who was a police officer, should be removed for cause as directly involved in police work as the defendant.

THE COURT: Now, as I understand it—and here is our microphone here—as I understand it, he was formerly a reserve officer; correct?

MR. BENDER: That's correct.

THE COURT: He's not currently?

3

>  MR. BENDER: That's correct, Your Honor.
>
>  THE COURT: All right. I'll decline a challenge for cause. I didn't hear anything that might bias him in that regard. And he specifically answered my question as to whether or not he was ever involved in this sort of matter.
>
>  Anything else, Mr. Benjamin?
>
>  MR. BENJAMIN: No. That's the only one.

[Dkt. #71, Transcript of Proceedings, January 17, 2012]. At trial, Sgt. Doug Brown testified he had been employed as a Police Officer for the City of Tulsa more than 31 years, had extensive experience, and had worked in every division of the Tulsa Police Department. Plaintiff argues:

> Taking that along with the fact that a reserve officer when call[ed] would work in various departments, it is virtually impossible that prospective juror Sumner did not only know Officer Doug Brown but also had not worked with him. It would also be virtually impossible that prospective juror Sumner did not know Sergeant Shane Tuell who worked in the Internal Affairs Department with whom all officers have contact. Taking this along with the fact that Juror Sumner was the foreman of the jury makes more than a colorable case that Juror Sumner was bias[ed] against Plaintiff.

[Dkt. #72 at 8]. Plaintiff asserts Sumner was untruthful and argues the court must conduct an evidentiary hearing to determine whether the juror knew Brown and/or Tuell.

The Supreme Court has articulated a two-prong test to determine whether a litigant is entitled to a new trial in the face of allegations that a juror's voir dire responses were untruthful. The litigant must demonstrate (1) that a juror "has failed to answer honestly a material question on voir dire," and (2) that a correct response would have provided a valid basis for a challenge for cause." *Skaggs v. Otis Elevator Co.,* 164 F.3d 511, 515 (10th Cir. 1998) (quoting *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556 (1984). To establish the first prong, the movant must prove that the juror in question intentionally gave an incorrect answer, and the answer must have been in response to a material question. *Skaggs,* 164 F.3d at 515 (citation omitted).

4

In this case, plaintiff has not established the first prong—that the juror failed to answer honestly a material question on voir dire. Plaintiff has presented *no* evidence Sumner knew any of the witnesses. Instead, he argues—based on the juror's former status as a reserve police officer—that it is "virtually impossible" Sumner did not know Brown and/or Tuell. This is nothing more than rank speculation.

When the court asked whether any potential juror knew any of the witnesses, Sumner remained silent. However, when the court asked whether any juror had had any sort of experience that might affect their consideration of the case, Sumner volunteered that he was a former Tulsa police reserve officer for approximately 10 years. The fact that the juror was forthcoming about his prior service as a reserve officer tends to reinforce his veracity regarding the question of whether he knew the police officer witnesses.

Historically, the Tulsa Police Department has employed almost a thousand people, including more than 800 sworn police officers serving in some 10 divisions. *See* http://www.tulsaworld.com/webextra/content/items/FinalTulsaReport080808.pdf. It is entirely possible, in a department of this size, that Sumner—a volunteer reserve officer—never met Brown or Tuell.[1]

The trial court has broad discretion to determine whether to conduct an evidentiary hearing when a claim of juror misconduct or bias is asserted. *See McDonough,* 464 U.S. at 556-57; *United States v. Scull,* 321 F.3d 1270, 1278, 1280 (10th Cir. 2003); *United States v. Apperson,* 153 Fed.Appx. 570, 511 (10th Cir. 2005) (unpublished). Here, plaintiff has presented *no* evidence Sumner was dishonest in responding to voir dire questions. Therefore, the court rejects plaintiff's request for an evidentiary hearing.

---

[1] Moreover, both Brown and Tuell submitted affidavits stating they did not know Sumner or any other jurors at any time before the trial. [Dkt. #73, Exs. 1 and 2].

## II. Jury Instructions

Plaintiff argues the court should have instructed the jury regarding his Fourteenth Amendment equal protection claim because it was referenced in the Pretrial Order.

"To preserve a challenge to a jury instruction, [a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." *Thierrien v. Target Corp.,* 617 F.3d 1242, 1252 (10th Cir. 2010) (citation omitted); *see also* Fed.R.Civ.P. 51(c)(1) and (d)(1). Under Rule 51(d)(2), the court may consider a plain error in the instructions that has not been preserved if the error affects "substantial rights." Under the "plain error" standard, a court will reverse only where the error was "patently plainly erroneous and prejudicial." *Giron v. Corrections Corp. of America,* 191 F.3d 1281, 1289 (10th Cir. 1999). The party claiming plain error has "the heavy burden of demonstrating fundamental injustice." *Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 553 (10th Cir. 1999).

The Final Pretrial Order recited plaintiff's allegation that both the warrantless entry and the traffic stop incidents were racially motivated. [Dkt. #41 at 1-2]. However, the Final Pretrial Order reflects that with respect to the first incident, plaintiff asserted only claims of a Fourth Amendment violation and negligence—*not* a Fourteenth Amendment claim. [*Id.*]. The Final Pretrial Order further reflects on pages 1 and 2 that plaintiff asserted a Fourteenth Amendment equal protection violation only with respect to the traffic stop. [*Id.*]. Plaintiff's voluntary dismissal of the second cause of action at the commencement of trial thus appeared to do away with his sole Fourteenth Amendment claim. However, Section XII(6) of the Final Pretrial Order lists as an issue of law to be litigated "[w]hether from the totality of the relevant facts, Plaintiff has demonstrated that the actions taken by Defendants had a discriminatory effect and were

motived by a discriminatory purpose so as to constitute a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." [*Id.* at 6].

Plaintiff's proposed jury instructions, filed the second day of trial, appear to reflect his understanding that the Fourteenth Amendment claim was no longer active, because they included only Fourth Amendment search and seizure instructions. [Dkt. #61]. The court distributed proposed jury instructions to the parties the second morning of trial, and spent the late morning and entire afternoon of that day with counsel for both sides discussing and revising the instructions. [Dkt. #67]. The parties' attorneys were repeatedly asked if they had additional proposed instructions. Plaintiff never requested, nor did he object to the absence of, a Fourteenth Amendment jury instruction. To the contrary, he affirmatively indicated on the record his acceptance of the final jury instructions.[2] Further, counsel for plaintiff never—in opening or closing arguments—argued defendant had violated his Fourteenth Amendment equal protection rights. Rather, he focused on alleged Fourth Amendment search and seizure violations. To the extent the Final Pretrial Order was ambiguous as to whether the Fourteenth Amendment claim pertained to both incidents, it was incumbent upon plaintiff's counsel to raise the issue when given multiple opportunities to do so. Finally, plaintiff has cited no evidence in the record supporting a claim of racial discrimination.

Plaintiff has not met "the heavy burden of demonstrating fundamental injustice." *Id.* Therefore, the court rejects plaintiff's claim of plain error in the jury instructions.

---

[2] Defendant asserts plaintiff's failure to object to the absence of a Fourteenth Amendment equal protection instruction, and his affirmative acceptance of the instructions, constitute a waiver of the issue. Waiver is the "intentional relinquishment of a known right," and a party who has waived a right is not entitled to appellate relief. *United States v. Carrasco-Salazar,* 494 F.3d 1270, 1272 (10th Cir. 2007) (quotation and citation omitted). The Tenth Circuit distinguishes between waiver and forfeiture (the failure to make the timely assertion of a right). *Id.* "[A] party that has *forfeited* a right by failing to make a proper objection man obtain relief for plain error; but a party that has *waived* a right is not entitled to appellate relief." *Id.* Arguably, defendant is correct that plaintiff waived any objection to omission of a Fourteenth Amendment instruction. However, the court finds it unnecessary to make a decision on this issue, because even if plaintiff "forfeited" rather than "waived" the objection, he has not met the burden of establishing "plain error."

### III. Conclusion

For the foregoing reasons, plaintiff's Motion for New Trial [Dkt. #72] is denied.

ENTERED this 4th day of September, 2012.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT